L. S. McFARLAND, *as next friend of Mary E. Dougherty*, v. THE TOWNSHIP OF EMPORIA.

### No. 10799.

1. INJURIES FROM DEFECTIVE HIGHWAY — *to recover from township for, caused by alleged insufficiency of barriers along river bank some distance from traveled way, plaintiff must show trustee's actual knowledge of insufficiency.* In an action under section 48, chapter 42, of the General Statutes of 1897, to recover damages from a township for the death of a person, claimed to have resulted from the want of a sufficient barrier along the bank of a river, where no notice of the insufficiency of the barrier is shown to have been given to the township trustee, but it is claimed that he knew the dangers of the place and the condition of the fence around it, it is incumbent on the plaintiff not merely to prove that the township trustee knew these facts, but also that he knew that the fence was an insufficient barrier. In a case of doubt as to the sufficiency of the protection afforded by the fence under ordinary circumstances, it is incumbent on the plaintiff to show that the attention of the township trustee was directly challenged to its insufficiency.

2. ——— *stricter proof of knowledge required of dangers outside, than of defects within the traveled way.* In an action against a township for injuries encountered outside of the traveled way, more strictness of proof of knowledge of dangers to be apprehended will be required than where caused by a defect in the traveled way itself.

Error from Lyon District Court. W. A. Randolph, Judge. Opinion filed July 8, 1898. *Affirmed.*

*Buck & Spencer*, for plaintiff in error.
*Charles B. Graves*, for defendant in error.

ALLEN, J. This action was brought against the township of Emporia, in Lyon County, on behalf of Mary E. Dougherty, by L. S. McFarland, as her next friend, to recover damages resulting from the death of Reuben Dougherty, her father. The evidence offered by the plaintiff shows that on the tenth of January, 1894, the deceased was driving a team,

hitched to a farm wagon, from Emporia towards his home, southeast from the city; that he was going south until he came to a place in the road where it connects on one side with a road from the east and on the west side passes along the Cottonwood River. At this point, the river bank was cut away to such an extent as to take out one-third the width of the road. The bank near the top was very steep for some feet and then sloped down to the river. The perpendicular distance from the top of the bank to the water is variously estimated at from fifteen to thirty feet. Around this place and on top of the bank, a fence, consisting of posts and two wires, had been built. Some of the evidence tends to show that the wires were down at the time mentioned. No one was with Dougherty or saw him at the time he came to his death; but in the morning he was found dead in the river, a short distance below this place. His horses were detached from the wagon, standing a little distance from it. The wagon was found in the river, and the tracks of it were traced back to the roadway. They indicated that the wagon had turned out from the traveled track, and gone over the bank of the river, nearly at right angles to it. Between the wagon tracks, the butt of a walnut fence-post which appeared to have been broken off between six inches and a foot above the surface of the ground was found. In order to go to his home, the deceased should have turned to the east at about the place where he in fact turned west. The record discloses no reason for his taking the wrong direction. It shows that he was a sober, industrious man, about fifty-five years of age.

There was evidence showing that the township trustee was familiar with the road, and knew of the encroachments of the river upon it; and that he was

present at a conversation between the members of the board of county commissioners when the matter of the encroachments of the river on roads at this and other points was talked of, but the matter of barriers to prevent accidents was not discussed. Harvey Wright was called as a witness for the plaintiff, and testified that he was township trustee on the tenth of January, 1894, and had been during the preceding year; that he had frequently passed along the road, and had done so between Christmas and New Year's preceding the accident. On cross-examination, which was objected to by the plaintiff, he testified that there was a fence around this place, made of posts, about a rod apart, with two wires on them. On re-direct examination, he testified that he thought the fence was originally built by the road overseer, but did not know certainly who built it. There was no evidence of any other notice to the trustee that the road was in a dangerous condition. The trial court sustained a demurrer to the evidence, and this ruling is complained of in this court.

It is contended that the evidence shows that the trustee knew the dangerous condition of the road at that particular place as well as any one else, and that formal notice was therefore unnecessary. The evidence in the case shows that the roadway in that vicinity was level and passable for the entire width between the fence mentioned and other fences and hedges on the east side of it. The traveled track was at least six feet from the brink of the river bank. Most witnesses place it considerably farther away. No danger was to be apprehended if the traveled way was followed. There was ample space for teams to pass. There was the barrier of the fence to warn passers-by away from the river. It is well settled that the public is not bound to make the whole width of a highway passable.

In many places it would be utterly impracticable to do so. The negligence charged in this case is in failing to maintain a sufficient barrier to prevent accidents of the kind that befell the deceased. There is no contention that that part of the roadway should have been maintained in a passable condition. The circumstances of the case indicate that either the team or the wagon of the deceased came in contact with a fence post of ordinary size and strength and broke it. The real question presented by the facts of this case is whether the township trustee was bound to take notice that the fence was an insufficient barrier.

In most cases, and under ordinary circumstances, it would seem that such a fence would be an ample warning to keep persons driving along the road from running off the bank. It would seem that horses under ordinary circumstances would be checked by it until they would see and avoid the danger. What impelled Dougherty's horses to rush over and break down the fence is a mystery wholly unexplained by the evidence. The township trustee was not bound to guard against all possible contingencies, all improbable conduct, but only against such dangers as he was notified of. There would seem to be in reason a distinction between defects in the traveled way itself, which must be encountered by persons traveling over it, and those dangers which arise merely from the proximity of cuts, washouts and pitfalls. Township authorities may well be held to much more strict performance of their duties in maintaining the safety of the traveled track than in providing against the more remote contingency of dangers to be encountered by those who leave it and go into unsafe places not prepared or intended for travel. The testimony in this case fails to show that the attention of the township trustee was challenged to the insuffi-

ciency of the fence as a barrier. We cannot say that he is chargeable with neglect in not having anticipated that such accidents might happen ; still less can we say that the township is liable under the statute. The knowledge the trustee had was not equivalent to the notice the statute contemplates. No error was committed by the trial court in sustaining the demurrer to the evidence.

Complaint is made of the ruling of the court on the cross-examination of Harvey Wright. The direct examination was for the purpose of showing his opportunity for knowing the condition of the road at the point under consideration, and from this the evident purpose was to draw the inference that he had such knowledge as his opportunities for obtaining it would afford. The cross-examination was for the purpose of showing, not by inference, but by direct statement, just what he did know about it. This is just exactly what cross-examination is for, to develop more fully and definitely the truth of the matter inquired about.

Complaint is made of the ruling of the court in excluding testimony with reference to the condition of the fence at different times prior to the injury. The matter was very fully examined into and no error was committed in this respect.

The judgment of the court is affirmed.