No. 19,403.

LENA B. WATKINS, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF HARPER, *Appellee*.

### SYLLABUS BY THE COURT.

1. DEFECTIVE BRIDGE—*Notice to Officer of Defect—May be Shown by Circumstantial as Well as Direct Evidence.* Actual notice to an officer of a defect in a bridge or highway, essential to recovery against the county for an injury and loss resulting from the defect, may be established by circumstantial evidence alone or by such evidence taken in connection with that which is direct or positive.

2. SAME—*Demurrer to Plaintiff's Evidence Improperly Sustained.* While the officer who had inspected the bridge a number of times denied that he had ever seen or known of the defects in the bridge, there was testimony which tended to show that the defects were obvious and had existed a long time, and this with other testimony is held to be sufficient to take to the jury the question whether or not the officer had actual knowledge of the defective condition which caused the injury and to defeat a demurrer to plaintiff's evidence.

Appeal from Harper district court; PRESTON B. GILLETT, judge. Opinion filed April 10, 1915. Reversed.

*George E. McMahon,* of Anthony, for the appellant.
*Donald Muir,* and *R. H. Beebee,* of Anthony, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Did the trial court rightly sustain the demurrer to plaintiff's evidence? is the single question for decision on this appeal.

Lena B. Watkins brought this action against the board of county commissioners of Harper county to recover damages for injuries sustained by her by reason of a defective bridge upon a certain highway and spanning a stream commonly known as Bluff creek. She alleged that the bridge was negligently permitted to be

Watkins v. Harper County.

out of repair and that there were holes in the floor of the bridge large enough for a horse's foot to pass through; that the chairman of the board of county commissioners had personal knowledge and notice of the condition of the bridge for more than five days prior to August 9, 1912; and that while driving across the bridge on August 9, 1912, the horse she was driving stepped into one of the holes, became frightened, and in its efforts to extricate itself jumped and plunged, throwing plaintiff against the dashboard of the buggy with great force and causing severe injuries. She alleged, also, that she had spent $1500 for doctor and surgeon bills and hospital fees, and was damaged in the sum of $10,000, and, further, that the injuries were caused without contributory negligence on her part. Defendant answered by general denial and alleged contributory negligence. The court sustained a demurrer to plaintiff's evidence and overruled her motion for a new trial. She appeals, and insists that actual notice to the chairman of the board was shown.

There is testimony that the plaintiff was injured because of a defective floor in the county bridge where the accident occurred and that this defect had existed for several months before the injury, and if there was testimony that the chairman of the county board had actual notice of the defective and dangerous condition of the bridge at least five days before the injury was suffered the case should have been submitted to the jury. Defendant is correct in its contention that the county can not be held liable unless the chairman of the board had actual, personal notice of the defect which caused the injury. In a number of cases it has been held that what is called constructive notice of the defect is not sufficient to bind the county and form a basis for a liability against it. (*Murray v. Woodson County,* 58 Kan. 1, 48 Pac. 554; *McFarland v. Emporia Twp.,* 59 Kan. 568, 53 Pac. 864; *Hari v. Ohio Township,* 62 Kan. 315, 62 Pac. 1010; *Parr v. Shawnee County,* 70

Kan. 111, 78 Pac. 449.). Constructive notice is that which is imputed by law to a person although he may have no personal information or actual knowledge of the prior fact, but the decisions holding that constructive notice to the officer of defects in highways and bridges is insufficient do not hold that actual, personal notice may not be shown by other testimony than the admissions of the officer or direct proof that knowledge of the defect was communicated to him. Actual knowledge of the defect, like any other fact, may be established by circumstantial evidence, that is, it may be shown by a number of minor facts obtained from several witnesses and sources which are so related and linked together as to warrant the inference that the officer had actual knowledge of the defect. (*Railway Co. v. Wood,* 66 Kan. 613, 72 Pac. 215; *Hashman v. Gas Co.,* 83 Kan. 328, 111 Pac. 468.) It is enough if circumstances are shown which of their own force establish *prima facie* that the officer had actual knowledge of the defect and of its dangerous character. The fact is to be inferred from the evidence, whether it be directly or circumstantially proven. When positive evidence is produced that information was communicated to the officer the court then infers that he had actual knowledge of the fact, and, likewise, when circumstances are proven which of themselves or in connection with direct evidence warrants the inference of actual knowledge by the officer that fact is inferred by the court. If the circumstances proven, either by themselves or together with some direct evidence, afford a fair and reasonable inference of actual knowledge by the officer of the defective and dangerous condition of the bridge they should have been submitted to the consideration of the jury upon whom the duty devolved of drawing inferences and settling the disputed question whether the officer in fact had actual knowledge. The testimony was abundant that the floor of the bridge was badly worn and broken, especially where the wheels of

vehicles tracked across it.   Taylor, a road overseer, testified that in the spring of 1912 the floor of the bridge was worn thin and needed new planks, that he found holes in the bridge and fastened patches over them with ten-penny nails, and one hole he patched with a piece of a pine box which was only half an inch thick.   Another witness, named Tucker, testified that for several months preceding the accident he frequently passed over the bridge, much of the time as often as once or twice a day, and that the floor was in bad condition, there were "holes here and holes there."   These holes were patched a number of times and some of the patches stayed on a week and some of them only two or three days.   In the latter part of July and the early part of August he observed that the patches were off, and at one time he informed one of the county commissioners that the bridge was in a dangerous condition and that some one was liable to break through and get hurt, and he stated that new planks were placed in the bridge shortly after the accident.   A witness named Younce testified that he crossed the bridge often, and twice a day during July, that he saw many holes in the floor and in some places half of a plank was broken off. Mingle, who had lived in the vicinity for twenty-eight years, testified that he crossed the bridge often, that some of the planks were worn out and some of them partially worn.   He noticed particularly that these defects existed in June and July preceding the accident. A witness named Watkins stated that he passed over the bridge once or twice a week during the summer and noticed defects in the floor of the bridge, and, further, that after the accident the bridge was repaired by taking out four-fifths of the old planks and substituting new ones.  Another witness, named Martin, stated that his horse broke through the floor of the bridge on August 7, and that he had observed a board sticking in a hole to warn people of the danger.   The plaintiff stated that in driving over the bridge she found a hole on each side of the driveway, and that in trying to guide

the horse so as to avoid one the horse broke through into another, causing the injury. The chairman of the board testified that he had inspected the bridge three or four times during the spring and summer of 1912 but did not recall that he saw any holes in the bridge. He stated, however, that he had looked at so many bridges that he could not remember definitely the holes or defects that he had seen in them. He further stated that if there were any holes in the bridge that he undoubtedly saw them and ordered them to be repaired. He admitted that there might have been holes in it at the time he inspected it, but as he had inspected so many bridges he could not remember the exact condition of any one of them. He further said that he could n't remember whether there were any patched holes in the bridge or whether it was patched or not, but he stated that there might have been holes in the bridge and if the holes were there he undoubtedly saw them.

It was not incumbent on the plaintiff to show that the officer had knowledge of any particular hole in the bridge and that plaintiff's horse stepped into that hole. It is enough if he had actual notice that the floor of the bridge was defective and dangerous as long as five days before the injury was sustained. It appears that the greater part of the floor was obviously defective as it was necessary to replace about four-fifths of the planks in the floor. The holes and broken planks were so numerous and manifest and had existed for so long a time that notice of it was almost inescapable to any one passing over it who had possession of his senses. While the chairman stated that he did not remember seeing the defects he frankly admitted that if they were there he did see them. From the evidence no one can doubt their existence. The chairman did inspect the bridge a number of times, and these conspicuous defects must have been staring him in the face at each inspection, whether it was a careful or a cursory one. In the recent case of *Abbott v. Wyandotte County,*

94 Kan. 553, 146 Pac. 998, the officer denied that he ever saw or knew of certain defects in a bridge, but other testimony made it clear that he had passed over it frequently, had examined and inspected it, and he appeared to know substantially everything about the bridge except an obvious defect. Notwithstanding the strictness of the rule requiring actual notice to the officer, it was held that the testimony was sufficient to go to the jury on the question of notice, and sufficient also to uphold a verdict against the defendant. So here, it must be held that there was material testimony tending to show that the chairman of the board had actual knowledge of the defective floor, and therefore the question should have been submitted to the jury.

The judgment of the district court is reversed and the cause remanded for a new trial.