No. 24,314.

KENT WATSON, *Appellee,* v. PARKER TOWNSHIP, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Defective Highway—A Township Road.* In an action for damages against a township for injuries sustained by a traveler because of a defective highway, the record examined, and held sufficient to show that the highway was a township road.

2. SAME—*Notice of Defective Highway to Township Trustee.* The record sufficiently shows that the township trustee had the requisite five days' notice of the defective highway to subject the township to liability.

3. SAME—*Whether Road Was Defective—A Question for Jury.* The evidence was sufficient to make it a question for the jury's determination whether the road was defective, notwithstanding the general rule that a township board having control of an ordinary rural highway is not bound to keep the full width of the road in safe condition for public travel.

4. SAME—*Contributory Negligence a Jury Question.* The question of plaintiff's contributory negligence was properly left to the jury under proper instructions.

5. SAME—*Excluded Evidence—Not Reviewable.* Rule followed that excluded evidence not submitted in conformity with section 307 of the civil code presents nothing for review.

6. SAME—*Instructions.* Objections to testimony and criticisms of the trial court's instructions examined, and not sustained.

7. SAME—*Verdict Not Excessive.* The amount of the verdict and judgment, together with the evidence, considered, and held not to require or justify a remittitur.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed March 10, 1923. Affirmed.

*Walter S. Keith, Harold McGugin,* both of Coffeyville, *S. H. Piper,* and *W. B. Grant,* both of Independence, for the appellant.

*Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages against a township for injuries sustained by plaintiff because of a defective township road. Plaintiff was driving his car southward on the west side of the usually traveled part of the road, when he saw another car coming towards him from the south at high speed. Although the beaten or traveled part of the [40-foot] road was thirteen and a half feet wide, yet because of caution to avoid a collision with the oncoming

Watson v. Parker Township.

car, plaintiff veered to the right so that his car ran into the unused portion of the highway, which was thickly covered with weeds. These weeds concealed a ditch; the weeds on the right side of his car dropped into it; plaintiff drove slowly for about 30 feet trying to get out of the ditch, but his car turned over and he was seriously injured.

The jury made special findings and returned a verdict for plaintiff, and judgment was entered accordingly. Some of the special findings read:

"Q. 3. On July 1, 1921, were there any guard rails next to said ditch along said road at the place where plaintiff's car went into said ditch? A. No. . . .

"Q. 5. Do you find that Lawrence Kauffman, trustee, knew or had actual knowledge, five days before plaintiff's alleged injury: (a) Of the presence of said ditch at said place? A. Yes.

"(b) Of the presence of weeds in said ditch? A. Yes.

"(c) That said weeds in said ditch rendered said road dangerous? A. Yes.

"(d) That on account of said ditch, the traveled part of said road was narrower at the place where plaintiff's car went into said ditch? A. Yes.

"(e) That there was no guard rail along said ditch? A. Yes.

"(f) That a guard rail along the side of said road next to said ditch would serve as a warning to travelers of the presence of said ditch? A. Yes.

"Q. 6. If you find that plaintiff was guilty of any negligence which contributed to his injury, please state of what the negligence consisted. A. None. . . .

"Q. 8. When plaintiff first started into the ditch, what effort if any did he make to stop his car before he upset? A. Applied brakes. . . .

"Q. 10. Could plaintiff in his automobile, traveling south and on the right side of the road, see the ditch at the right side of the road? A. No.

"Q. 11. If you answer this question 'No,' please state why he could not see the ditch? A. For weeds.

"Q. 12. At the place where plaintiff started into the ditch, how many feet wide was the road on which vehicles could travel and pass each other? A. 13½ feet. Traveled road.

"Q. 13. At the place where plaintiff upset how many feet wide was the road upon which vehicles could pass each other? A. 13½ feet. Traveled road.

"Q. 14. Was the road defective? A. Yes.

"Q. 15. If you answer the last question 'Yes,' then state what were the defects? A. Deep ditch. . . .

"Q. 19. Was the ditch in the traveled way? A. In the right of way."

Defendant assigns various errors, contending, first, that the evidence failed to show that the highway where plaintiff was injured had been designated as a township road, in accordance with section 15 of chapter 264 of the Laws of 1917. But it seems to have been taken for granted in the trial court that the highway was a town-

ship road.  The township trustee was called as a witness for plaintiff, and he testified that the township board had employed a man to mow the weeds in that ditch, and that they were so mowed about June 1, a month before the accident.  This exercise of jurisdiction was some evidence that it was a township road.  We note, also, that the trustee in the course of his examination casually admitted that it was a township road.

The next point urged is that the evidence did not show that the trustee had five days' notice of the defect in the road.  We discern no insufficiency in the evidence in this respect.  One witness testified: "I told him [the trustee] the road was dangerous and my wife was afraid to drive along there.  I asked him to work the road and told him the road .was too narrow."  Indeed, the entire township board inspected this particular part of the road about a month before the accident, and it was pursuant to this inspection that the trustee hired a man to cut the weeds so that travelers sould see and avoid the ditch.  Under this state of facts, the court must hold that the statutory prerequisite to the township's liability—five days' notice to the trustee of the defect in the road (Gen. Stat. 1915, § 722)—was fully satisfied.  (*Mosier v. Butler County*, 82 Kan. 708, 109 Pac. 162; *Higman v. Quindaro Township*, 89 Kan. 476, 480, 132 Pac. 215; *Sims v. Williamsburg Township*, 92 Kan. 636, syl. ¶ 1 C, 141 Pac. 581; *Abbott v. Wyandotte County*, 94 Kan. 553, 146 Pac. 998; *Watkins v. Harper County*, 95 Kan. 166, 147 Pac. 822; *Dubourdieu v. Delaware Township*, 106 Kan. 650, syl. ¶ 6, 189 Pac. 386.)

The next contention is that the evidence did not prove that the road was defective.  The facts touching the width of the highway, the width of the traveled portion of it, the location of the road in a rural community and the amount of travel on the road, the presence of the ditch and its concealment by the prolific growth of weeds, were all fairly well established.  Did these facts show a defect?  Defendant cites many cases which hold, in substance, that it is not necessary to keep the full width of a rural highway fit for public travel, and that where a sufficient portion of its width is maintained in a safe and passable condition to serve the reasonable needs of the public in that locality, the fact that outlying and unused portions of the road are impassable or dangerous, and yet without barriers, does not constitute the sort of defect for which the municipality or quasi-municipality is liable.  (*McFarland v. Emporia Twp.*, 59 Kan. 568, 570-572, 53 Pac. 864; *Town of Spencer v. Mayfield*, 43 Ind. App.

134; *Morse v. Belfast,* 77 Maine, 44; *Macomber v. City of Taunton,* 100 Mass. 255; *Bell v. Village of Wayne,* 123 Mich. 386; *Monongahela City v. Fischer,* 111 Pa. St. 9; *Brophy v. Cleveland Twp.,* 236 Pa. St. 426; *Wessels v. Stevens County,* 110 Wash. 196; *Branegan v. Verona,* 170 Wis. 137, 174 N. W. 468; Elliott on Roads and Streets, 3d ed. vol. 1, § 588, to vol. 2, § 800.)

Such doubtless is the general rule, but unless the court could say as a matter of law that the admitted or established facts showed that this road was not defective, the question was one for the jury's determination. Here it was shown that at least one user of the road was afraid of it, that the ditch was not an ordinary one for mere drainage, but in part had been dug by an adjacent land owner for earth to make an embankment against flood water, that it was deeper than required for road drainage, that the township trustee and township board themselves considered it a matter of such solicitude for the safety of travel as to direct that the weeds in the ditch should be mowed so that travelers might see and avoid the ditch, that the traveled portion of the road was rather narrow—only thirteen and a half feet wide, that the edge of the ditch was only two feet from the traveled path, and that there was no guard rail of warning of its presence. Moreover, the jury were sent to view this ditch, and it seems, under all these circumstances, that it would be a judicial invasion of the jury's functions to hold arbitrarily that the road was not defective. Here, as in *Sims v. Williamsburg Township,* supra, it must be said:

"It is not possible for the court to declare as a matter of law that an occurrence of the kind under consideration was not naturally to be anticipated and that reasonable prudence did not require a barrier to be placed along this wall, or other measure be taken, to protect users of the highway from injury. The question was one of fact for determination by the jury, and in the opinion of the jury and of the trial court the highway was defective and dangerous and the township was negligent in maintaining it in the condition which confronted the plaintiff." (p. 638.)

One of the defenses pleaded was contributory negligence, and it is urged that this defense was established. There was some testimony that the ditch could be seen:

"You could see the little ditch when driving south when you were down there in the flat but pretty hard to see up there on that raise. As you got up there you could see the ditch if you looked over in there, that is, as you came down along the ditch if you looked down along the road there if you looked to your right you could see the ditch."

However, it must be conceded that a car driver has other duties besides that of close and critical examination of the character of the road at the side of the beaten path; he has to keep an eye on the road ahead, and to gauge the clearing space between his car and that of the speed fiend or road hog who is coming to meet and pass him. We think the question of contributory negligence was the usual one—for a jury's determination. In *Bowers v. Mildren*, 107 Kan. 584, 586, 193 Pac. 318, it was said:

"While the evidence tended to support the material allegations of the petition, the defendant urges that the plaintiff was guilty of contributory negligence, and also that he assumed the risk incident to his employment. Granting that there may have been some evidence tending to show the plaintiff's negligence, that would not justify the termination of this lawsuit on a demurrer. The matter of plaintiff's contributory negligence was a jury question. (*Delaware, &c., Railroad v. Converse*, 139 U. S. 469.) Every disputed *issue of fact* in a common-law action between private individuals (*Reihl v. Likowski*, 33 Kan. 515, 520, 6 Pac. 886) is a jury question, unless a jury is waived. (*K. P. Rly. Co. v. Brady*, 17 Kan. 380; *K. C. Ft. S. & G. Rld. Co. v. Owen*, 25 Kan. 419.)"

This same rule applies to the argument that if he had stopped at once when he found himself in the ditch, he would not have upset. He was in the ditch, partly because of the defect in the road, partly, too, no doubt, because he was afraid the speedster would collide with him if he did not yield most of the traveled way, and he was not negligent as a matter of law because he did not stop instantaneously nor because he drove slowly in the ditch for a few feet, hoping to be able to drive his car out of the ditch. (*Litsch v. Electric Co.*, 95 Kan. 496, syl. ¶ 5, 148 Pac. 632.)

Defendant next complains of the exclusion of evidence which might have shown the nature and extent of road construction in the vicinity, the number of similar places in the road in that community, the cost of guard rails, the topography of the surrounding territory in its relation to drainage and other circumstances, and that there was nothing unusual about the condition of the road and ditch. But we look in vain for any presentation of such evidence in support of the motion for a new trial. Perhaps defendant could have shown all that and perhaps not. Perhaps such testimony might have been material; perhaps not. At all events, we cannot consider it. (Civ. Code, § 307; *Elliott v. Oil Co.*, 106 Kan. 248, 251, 187 Pac. 692; *Leach v. Urschel*, 112 Kan. 629, syl. ¶ 9, 212 Pac. 111.)

Watson v. Parker Township.

Error is urged in the admission of certain testimony whose competency was challenged, on the assumption that the trustee had neither notice nor actual knowledge of the existence of the dangerous condition of the place of the accident, but since we have held that the trustee had both notice and actual knowledge, the objection to the testimony cannot be sustained.

Fault is found with the instructions. In one of these, number 3, it is argued that the instruction would give the jury "the impression that plaintiff had a right to presume that the road was suitable for travel throughout its entire width." That criticism seems far from correct. The instruction declared it to be the duty of the township not to permit any conditions to exist in the road of which the township board had notice which would render the use of the road dangerous to the public traveling thereon, and—

"  . . . And in this connection you are instructed that the plaintiff, Kent Watson, using said road in controversy in the absence of any notice to the contrary had a right to presume that the highway commissioners would perform their duty and that said road presented no hidden defects dangerous to public travel."

A criticism is also lodged against the instruction relating to the law of contributory negligence. The court said: "Unless you find that the plaintiff's own negligence contributed *materially* to, or was the proximate cause of his injury, your verdict should be for the plaintiff." Again, the court said that if the jury found that the plaintiff failed to act as an ordinary person would in like circumstances, and that his failure so to act contributed *materially* to his injury then their verdict should be for the defendant. It is gravely urged that these instructions are erroneous because of the use of the adverb "materially." And this contention is actually backed up by citations from courts of great distinction. All we can say is that the *ipse dixit* of no court on such a refinement of words could persuade us to disturb a judgment on so slight a ground unless we had before us a grossly erroneous result, a palpable miscarriage of justice, traceable to no other cause than such criticised instruction. Indeed our code would forbid it. (Civ. Code, § 581.) Here, however, the jury found specifically that the plaintiff was guilty of no contributory negligence (Finding No. 6), so the criticized use of the adverb becomes immaterial.

The trial court's definition of a defective road is complained of. A defective highway within the meaning of the statute (Gen. Stat. 1915, § 722) is simply a public road which is dangerous to the

traveling public, and jurors of ordinary intelligence would hardly need multiplicity of words to tell them its meaning. Instructions 3 and 9 covered the point with perhaps more elaboration than necessary but not at all inexactly.

We note defendant's criticisms leveled at other instructions, but they disclose nothing erroneous or which would justify discussion. It is finally urged that the verdict for $3,000 was excessive. This raises a question which is nearly always difficult for this court to determine. When a person is badly injured and suffers much pain and is compelled to undergo treatments in a hospital, as was the case here, he is entitled to substantial damages against the wrongdoer, and it is only when the evidence will not support the sum allowed, or the sum itself is so large as to shock the conscience of this court, that we feel at liberty to order a remittitur or a new trial at the option of the plaintiff. No such situation confronts the court here, and the amount allowed will have to stand.

The record presents no substantial error and the judgment is affirmed.