No. 25,838.

CHARLES E. HALL, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LINN, *Appellee.*

SYLLABUS BY THE COURT.

HIGHWAYS—*Injuries from Defects—Contributory Negligence—Evidence.* In an action for damages for the death of plaintiff's son caused by defendant's negligence in permitting the existence of a defective county road, the record examined and held to contain substantial evidence to support the trial court's finding of contributory negligence on the part of the deceased.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed July 11, 1925. Affirmed.

*A. M. Kent* and *John A. Hall,* both of Pleasanton, for the appellant.

*H. D. Reeve,* county attorney, *Harry Warren* and *W. P. Dillard,* both of Fort Scott, for the appellee.

---

Highways, 29 C. J. § 485; 13 L. R. A. (N. S.) 1238, 48 L. R. A. (N. S.) 639, 13 R. C. L. p. 466.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action against defendant for the wrongful death of his nineteen-year-old son who was killed by the overturning of an automobile on a defective county highway. The defense was a general denial and a plea of contributory negligence. A jury was waived; the trial court heard the evidence of the parties, which included ten photographs exhibited by the litigants to show the situation and surroundings which contributed to the accident; and the court made a general finding on the issues in favor of defendant, and gave judgment accordingly.

Plaintiff appeals, contending that defendant's negligence was clearly established, which is probably correct; and that there was no evidence of deceased's contributory negligence, which question is the crucial point in this lawsuit.

The facts were these: Defendant maintains a county road which runs north and south through Linn county, known as the Jefferson highway. A short distance south of Farlinville, in Linn county, the road is crossed by a ditch which runs from west to east and turns sharply to the south immediately east of the traveled portion of the road, and runs south for about forty feet and then turns east, passing out of the right of way of the road into an adjacent pasture on the east. The ditch is spanned on the highway by a culvert twelve feet eight inches wide between the hub rails. Where the ditch makes the turn southward alongside the traveled way its west bank is quite steep, sloping about forty-five degrees, and is overgrown by weeds, and immediately south of where the ditch makes the turn to the east out of the highway into the pasture there is a large clump of bushes, about forty-two feet south of the culvert, which forms a partial barrier to travel on that portion of the right of way. South of the culvert the narrowest traveled portion of the road safe and used for travel was eighteen feet between the rounding shoulders of the roadway. It was twenty-eight feet between the shoulders of the roadway at the point where the deceased drove off or partly off the traveled part of the road, about seventy-four feet south of where the car overturned. According to some of the testimony the track of the wheels on the east side of the car was "over the shoulder about eighteen inches" for eight or ten feet south of where the car upset.

The plaintiff's son and another young man and two young women

were driving north on this road in a Ford sedan about 9:30 p. m. on August 30, 1923. As they approached the culvert they saw a car coming from the north. The deceased, who was driving, turned to the east side of the road, partly or altogether out of the beaten path, and proceeded slowly past the clump of bushes, and when about nineteen feet from the culvert the car capsized into the ditch. The plaintiff's son sustained injuries from which he died the same night.

This court considers it unnecessary to discuss the negligence of defendant in the maintenance of the road, further than to say that we see nothing wanting in plaintiff's evidence to support that phase of his cause of action, and virtually nothing in defendant's evidence to excuse its dereliction in permitting such a ditch to exist so close to the traveled way without adequate guard rails to keep people, whether careful or careless, from driving into it. (*Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051, and citations.)

The question whether there was a substantial showing of contributory negligence depends upon the significance which the trial court might justly attach to the following facts:

At the point where deceased turned the car out of, or partly out of, the traveled portion of the highway, the road, safe for travel, was twenty-eight feet wide. Deceased did not need to turn out of the highway at that point, which was 116 feet south of the culvert. He drove ahead towards the clump of bushes which grew on the south side of the ditch, where it turns abruptly east into the pasture. That clump of bushes was a fair warning that where they were going there was no roadway prepared or fit for travel. While the deceased might not have known that the ditch ran south along the east side of the road after it ran through the culvert, the culvert was a warning that east of it there was a ditch running in some direction, and he must have known, or the exercise of common prudence would have caused him to realize, that if he kept on as he was going he would inevitably drive into some sort of a ditch. The photographs show—and, indeed, plaintiff makes the same point to prove the defendant's negligence in maintaining the road—that the east hub rail of the culvert was almost directly in line with the west bank of the ditch skirting the east side of the road. That fact does prove the defendant's negligence, but surely it is not without some evidential significance also to prove that the deceased was much too far to the east side of the road, because as he was driving, if the car had not overturned into the ditch, it would have collided

with or straddled the east hub rail of the culvert. The defendant produced several witnesses who testified that distances varying from 100 feet to 250 feet south of the culvert the ditch could be seen by a person coming from the south. Much of this latter testimony related to a daylight view, and both parties were somewhat chary about developing the visibility of the ditch after night, but the chairman of the county board testified:

"You could see the ditch and the weeds with an automobile light if the light was bright enough. If the light was shining down the road it would be shining on the bushes.

"Q. You think that one driving north on that road there at night, with the light out in front of him, you think he could see there was a ditch down there where those bushes are, do you? A. Well, I think he could, if he had been looking."

The plaintiff had adduced testimony to prove that the car was equipped with standard magneto lights in proper condition. A garage man, who had frequently driven over this road by day and by night, testified on behalf of defendant that Ford car lights in good condition have a light spread of twenty-five to fifty feet, and with them a person can see as well by night as by day. One witness testified that the clump of bushes would not intercept a view of the ditch to a driver coming from the south. Another witness testified that while the plaintiff's son lay dying one of his companions said, "The driver was just too good a fellow, just gave too much of the road." Plaintiff says the plaintiff's son died "within a few minutes" after the accident. Within thirty minutes after the accident one of the young ladies in the car made the remark, "They had pulled too far out of the road." The young man who was with deceased on the night of the fatality, James Mullis, while testifying for plaintiff, deposed:

"William Hall *was driving out of the traveled part of the road* to meet this Oklahoma man who was approaching from north, north of the culvert. William Hall *was not very much off the traveled road.* . . . I do not think Mr. Hall's sight was blinded by the oncoming automobile at that point. William Hall slowed up and I think the other man slowed up also, and the next thing I knew the car turned over into the ditch."

Another of plaintiff's witnesses testified:

"I followed the track of the east or right-hand wheel of the automobile back south from the point where the car turned over. The tracks showed where he had started to turn out of the traveled part of the way to meet the car that was coming from the north. I did not measure the distance. The

track looked like when it had started to slip over the edge that it had tried to turn back into the road along the top shoulder of the ditch. It looked like the wheel had plowed along the shoulder of the ditch or along the edge of the ditch."

One of the young women who was in the car testified:

"I remember *the car turning out of the main traveled part of the road.* We turned out of the main part of the road to let this other car pass. *As we drove along the side of the road* the car turned over."

The other young woman, who was a passenger, testified:

"I noticed that William pulled the car a little bit out of the traveled track toward the east to meet this approaching car."

In view of the foregoing, together with the inferences of fact inherent in all the circumstances as well as the instructive and illuminating situation disclosed by the photographic exhibits, it would not do for this court to say that the trial court had no substantial evidence before it on which to base its finding that the deceased was guilty of contributory negligence; and such a finding is the fair implication deducible from the general finding of the issues in defendant's favor.

The judgment must therefore be affirmed.

HOPKINS, J., dissenting.