GRANT HORNADAY *et al.* v. THE STATE OF KANSAS,
*ex rel.*

**No. 12,661.** (65 Pac. 656.)

SYLLABUS BY THE COURT.

1. STATE BOARD OF CHARITIES—*Acts Construed.* Chapter 46,
Laws of 1881 (Gen. Stat. 1901, § 1288), conferring power on the
several boards of regents, trustees or managers of state institu-
tions to acquire lands, by condemnation proceedings in the name
of the state, for the purposes enumerated in the act, is not re-
pealed by chapter 160, Laws of 1891 (Gen. Stat. 1901, §§ 6696–6712),
either expressly or by implication.

2. ———— *Acquire Lands by Condemnation—Not by Purchase.*
The board of trustees of the institutions for the education of the
blind, the deaf and dumb, and the asylums for the insane (com-
monly called the state board of charities), can acquire lands for
the use of the state, for the purposes mentioned in section 6606 of
the General Statutes of 1901, by the exercise of the right of emi-
nent domain only, and not by purchase.

Error from Clay district court; W. S. GLASS, judge.
Opinion filed July 6, 1901.   Division two.   Reversed.

STATEMENT.

THIS was a suit brought by the state of Kansas, on
relation of the county attorney of Clay county, to en-
join the members of the board of trustees of the insti-
tutions for the education of the blind, the deaf and
dumb, and the asylums for the insane (commonly
called the state board of charities), from instituting
condemnation proceedings to appropriate to the use
of the state certain lands near the city of Parsons, in
Labette county, selected as a place of location for a
proposed asylum for the insane, said selection having
been made by legislative committee appointed under
chapter 13, Laws of 1899.   It was also the purpose of
the action to enjoin the said board of trustees from
purchasing the land selected from the owners thereof

and attempting to take title in the name of the state, and to prevent warrants being issued by the auditor for the price and value of said real estate. Section 1, chapter 46, Laws of 1881 (Gen. Stat. 1901, § 6606) reads :

"That, for the purpose of acquiring lands on which to erect buildings, or for laying and maintaining water-mains, sewers, roads, or for any other purpose necessary to properly maintain and carry on any state institution or business thereof, the several boards of regents, directors, trustees or managers of said state institutions may proceed in the same manner as provided by law in the case of railroads for rights of way and other purposes, said proceedings to be in the name of the state of Kansas, by the chairman of the board, or some one designated by the board or the chairman thereof."

Ten years later a state board of public works was created by chapter 160, Laws of 1891 (Gen. Stat. 1901, §§ 6696–6712). By section 5 of the act it was made the duty of said board to superintend the erection of public buildings, the completion of buildings theretofore commenced, including additions, alterations and repairs to buildings already erected, the construction of systems of sewerage, steam heating, lighting, etc., also the improvement of grounds upon which said state buildings are erected, with power to adopt plans and appoint a competent architect. Section 15 (Gen. Stat. 1901, § 6710) of the act reads :

"The state board of public works shall have power to lay off, appropriate and condemn for the state the fee, or the right of user, to such land as may be necessary for the purpose of securing grounds for the construction of any state building, or for constructing or completing any drains, sewers or other improvements connected with any of the state institutions, which have been heretofore or may be hereafter authorized by law, and appraise the value of the land taken,

and of each owner's interest therein, and assess the ⌐ m ges, if any, to the residue of the tract, all of which shall be embodied in a written report, and forthwith filed in the office of the county clerk of the county in which such land is situated, and shall be recorded in the office of the register of deeds of such county ; and upon a statement showing the amount awarded to each landowner under this section, signed by the president and secretary of the board, the auditor of state shall draw his warrant for the amount awarded, payable to the treasurer of the board, out of any funds appropriated for that purpose, or appropriated to the institution for the use or benefit of which such condemnation proceedings were had.   Before proceeding to condemn and appraise such lands, as aforesaid, the board shall give notice of the time when and place where it will commence such proceedings, and shall deposit the money awarded, and in all other respects conform its proceedings under this section as near as may be to the provisions of law for the appropriation of land for the use of railway corporations ; and the landowner shall have the right of appeal the same as in such cases, and if upon the trial of such appeal, or in compromise thereof by said board, the award shall be increased, the auditor of state shall, upon a statement thereof as hereinbefore provided, draw a warrant therefor, payable the same as the warrant before mentioned, and the amount thereof shall be paid to the landowners entitled thereto, or legal representatives. The report of proceedings under this section shall in addition to other matters show whether the fee to the land, or the right of user only, is taken ; and upon the filing of such report, and depositing the amount awarded as herein provided, said board may, notwithstanding the pendency of any appeal, take possession of and use the land the same as if no appeal had been taken.   And upon the payment of the amount awarded by said board, or on appeal, if any is taken, the fee simple to the land appropriated, or the right to use the same as specified in the report, shall be vested in the state forever.''

Section 17 of said chapter 160 is as follows:

"Chapter 168 of the Laws of 1879, chapter 186 of the Laws of 1885, section 1 of chapter 187 of the Laws of 1887, and all acts and parts of acts in conflict herewith are hereby repealed." (Gen. Stat. 1901, § 6712.)

The plaintiff below obtained a decree in the court below enjoining defendants from proceeding further in the respects mentioned. The latter are here by proceedings in error.

*Kimball & Osgood, T. N. Sedgwick,* and *H. G. Webb,* for plaintiffs in error.

*J. H. Russell,* county attorney, and *Coleman & Williams,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. : The principal controversy between the parties is whether the law of 1891 repeals the act of 1881. It does not do so in express terms. Under the repealing section of the Law of 1891, reference is made to chapter 168, Laws of 1879, chapter 186, Laws of 1885, and section 1, chapter 187, Laws of 1887, and its express repealing force is applied to the preceding enactments mentioned. If there be a repeal, it is by force of the words "and all acts and parts of acts in conflict herewith are hereby repealed." In *Kansas Breeze Co. v. Edwards,* 55 Kan. 630, 633, 40 Pac. 1004, the following language was used:

"Repeals by implication, although not forbidden by the fundamental law, are not to be favored, especially in view of section 16 of article 2 of the constitution; and this court said, in the case of *Stevens v. Ballou,* 27 Kan. 594, 600, 601, that in order to declare any legislation repealed by that method the court 'should be satisfied that such has been so done beyond all reasonable doubt.'"

In *Keirsey v. Comm'rs of Labette Co.*, 30 Kan. 579, 2 Pac. 864, this language was used:

"Repeals by implication are not favored, and are sustained only when the later law cannot by any fair and reasonable construction be harmonized with the former.   Both laws are to be sustained, if possible."

"A repeal by implication must be by necessary implication.   It is not sufficient to establish that the subsequent law or laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary.   But there must be a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only *pro tanto*, to the extent of the repugnancy."   (Ander. Law Dict. 879.)

We can see no good reason why the trustees for the different asylums, commonly known as the state board of charities, should not be given power to condemn lands necessary for the erection of buildings for institutions, the care of which comes within their jurisdiction.   The conferring of such power is a matter of legislative discretion, which may be exercised by lodging the same in any number of boards or tribunals authorized to act in behalf of the state. In the statute authorizing the condemnation of lands for railway purposes two methods for determining the value are provided, one by the board of county commissioners acting as appraisers, and the other by three commissioners selected by the district judge.

In *Shoemaker v. Brown*, 10 Kan. 392, it was said:

"It is a general rule that a mere grant of jurisdiction to a particular court, without words of exclusion as to other courts previously possessing the like power, will only have the effect of constituting the former a court of concurrent jurisdiction with the latter."   (*Delafield v. State of Illinois*, 2 Hill, 159.)

When a branch of this controversy was before this court last year, after discussing the scope of the power of the board of charities to condemn under the law of 1891, it was said:

"Further than this, by section 15 of chapter 160 of the Laws of 1891 (Gen. Stat. 1899, § 6421; Gen. Stat. 1897, ch. 5, § 15), the state board of public works (if such a board exists) is also empowered to appropriate and condemn such land as may be necessary for securing grounds for the construction of any state building. We think that the legislature, when it passed the act of 1899, did so with the intention that the said power conferred upon plaintiffs in error as a board of trustees, or on the board of public works, should be brought into exercise for the purpose of obtaining title to the site chosen, and that chapter 13 of the Laws of 1899 is to be coupled with chapter 46 of the Laws of 1881 (Gen. Stat. 1897, ch. 68, § 18; Gen. Stat. 1899, § 6336), and with section 6421 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 5, § 15), and that the latter two should be considered with the former to give effect to the legislative intent." (*Hornaday v. The State*, 62 Kan. 828, 62 Pac. 329, 330.)

Counsel for defendant in error assert that the above extract from the opinion is *dictum*, and what was said was unnecessary to a decision of that case. It is true that the language was used *arguendo*, but the expressions were not made unadvisedly or without consideration of the matter. It does not follow that a legal proposition stated *obiter* is bad law. It cannot be held that there was a set purpose of the lawmakers to divest the board of charities of the power to appropriate land under the provisions of the law of 1881.

It is contended by counsel for plaintiffs in error that the board possesses the power to buy the land selected by the legislative committee. We do not concur in

this claim.   In *Hornaday v. The State*, supra, at page 830, it was said :

"The rule is that, in the case of those acting on behalf of the public, there is no power to agree as to the compensation to be given to the landowner where his property is sought to be taken for public use, unless it is given by statute, either expressly or by implication." (See Lewis, Em. Dom., 2d ed., § 288 ; *City of Chicago v. Hayward*, 176 Ill. 130, 52 N. E. 26 ; *Trester v. The City of Sheboygan*, 87 Wis. 496, 58 N. W. 747 ; *Village of Hyde Park v. Spencer et al.*, 118 Ill. 446, 8 N. E. 846.)

The act of 1881 confers specific authority on the state board of charities to secure the necessary lands in a certain designated way, and the manner pointed out must be pursued.

The judgment of the court below will be reversed, with directions to proceed further in accordance with the views expressed in this opinion.

CUNNINGHAM, ELLIS, JJ., concurring.