# SUPREME COURT,
## STATE OF KANSAS.

## JULY TERM, 1912.

### PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER, } JUSTICES.
HON. ALFRED W. BENSON,
HON. JUDSON S. WEST,

SCHOOL DISTRICT NO. 7 OF OSAGE COUNTY, *Plaintiff*, v. J. T. COUGHLIN et al., as The Board of County Commissioners of the County of Osage, etc., et al., *Defendants*.

No. 18,442.

#### SYLLABUS BY THE COURT.

SCHOOL DISTRICT—*Limit of Taxation—Special Election.* Section 27 of chapter 245 of the Laws of 1909 (Gen. Stat. 1909, § 9420), authorizing taxing districts, including school districts, to exceed the statutory limit of taxation by special election, three-fourths of the votes cast being in favor thereof, was not repealed by chapter 271 of the Laws of 1911, relating to the determination, certification and levying of the annual school-district tax.

Original proceeding in mandamus. Opinion filed October 30, 1912. Peremptory writ allowed.

*Thomas M. Lillard,* of Topeka, for the plaintiff.

*C. T. Neihart,* of Carbondale, for the defendants.

1—88 KAN.

School District v. Coughlin. ·

The opinion of the court was delivered by .

WEST, J.: The plaintiff school district by vote of the inhabitants, at an election duly called, decided that the levy for school purposes for the ensuing year should be seven mills on the dollar or so much thereof as was necessary to raise $8000. The county commissioners and county clerk were notified of this action but refused to extend the levy on the tax rolls, and were proceeding to make a levy of four and one-half mills when this action was brought to compel compliance with the directions of the district. Four and one-half mills would produce about $6700 and to raise $8000 would require a levy of about five and one-tenth mills.

The sole question presented by the briefs and arguments concerns the effect of the limitation fixed by chapter 271 of the Laws of 1911, restricting levies to four and one-half mills. Up to 1909 the inhabitants qualified to vote at a school meeting, lawfully assembled, had the power to vote a tax for school purposes, the amount having been increased from two per cent in 1876 to two and a half per cent in 1907. (Laws 1907, ch. 318, § 1.) By section 30 of article 4 of chapter 122 of the Laws of 1876 this tax, properly certified, was required to be entered on the tax rolls by the county clerk.

In 1909, chapter 245 was enacted, limiting the levy of taxes in the several taxing districts of the state, section 24 expressly limiting the tax to be voted at an annual school-district meeting to three and one-half mills. At the same session chapter 214 of the Laws of 1909 was enacted authorizing the inhabitants at a school meeting, lawfully assembled, to vote a sum not exceeding the amount fixed by law, which should be certified by the clerk on or before the 25th day of July and levied by the county commissioners. Here the system was changed from a levy of a per cent by

a district at this meeting to determining a sum, and the county commissioners were required to make such levy as to produce practically this sum, the limit fixed by section 24 of chapter 245 of the Laws of 1909 being three and one-half mills. Chapter 245 took effect thirteen days before chapter 214 was in force. Chapter 214 amended the statute relating to the powers of electors at school meetings and added a section amending the former statute concerning the method of extending the levy on the tax rolls by the county officers. Up to the passage of chapter 245 of the Laws of 1909 whatever tax was or could be determined upon by a school district was controlled by a majority vote at an annual or special meeting. But section 27 of chapter 245 (section 24 having restricted the authority of the voters at an annual meeting to three and one-half mills, which theretofore was twenty-five mills) provided that school districts by posting a notice in the manner provided by law for other elections or meetings might at an annual or special meeting, by a favorable three-fourths vote, empower the levying officers to make such increased levy as had been named in the notice, such increased levy to be only for the year voted upon. It will be seen, therefore, that these enactments left it within the power of an annual or special school-district meeting to authorize a levy of three and one-half mills by a majority vote, and empowered the district to hold an election for the express purpose of increasing this levy to such extent as three-fourths of the voters at such election might determine, such increase to be for the one year only.

It is not strange that the same legislature which reduced the maximum from twenty-five to three and one-half mills should make this provision for exceeding the latter limit by such election and majority. It must be remembered also that chapter 245 was concerned with fixing limits in all the taxing districts of the state and

not with the general powers of annual school-district meetings.

No doubt could arise that with the law as thus existing the plaintiff district would have the right to tax itself for the one year as determined upon at the election, which is said to have resulted in a vote unanimously in favor of the proposition. However, the legislature of 1911 enacted chapter 271 of the Laws of that year, which amended the second section of chapter 214 of the Laws of 1909, concerning the certifying and levying of the school-district tax, and provided that the county commissioners "shall, on or before the first Monday in August, annually, levy . . . a percentage which will produce an amount equal to and not exceeding by more than five per cent the amount certified by the district clerk; provided, however, no levy shall exceed four and one-half mills." The section thus amended provided that the sum fixed by the district should not be exceeded by more than one per cent, the amendment simply changing the former enactment so that such sum should not be exceeded by more than five per cent and providing that no levy should exceed four and one-half mills. Being to quite an extent a reënactment of the law relating to the certification and levy, and having no apparent relation to the general limiting act of 1909, the legislature can not be held to have intended to amend or modify such act unless the wording compels such holding, for repeals by implication are not favored, and the general rule is that the subject manifestly under consideration is the only one to which a given enactment applies.

It may be plausibly argued that by giving effect to both statutes the district might by a special election raise the limit from three and one-half to four and one-half mills. But it is more reasonable to conclude that by the later statute it was intended to cover the ordinary certification and levy arising annually, based on

School District v. Coughlin.

a majority vote at the usual school-district meeting, without impairing the power of the district to exceed the limit upon the expression of a desire so to do by three-fourths of the voters at an election or meeting held for the purpose of taking the sense of the district on the question.

In chapter 245 the legislature had before it the matter of reducing and limiting the power of each taxing district in the state to impose a burden upon itself in the usual way, and was careful to make express provision for each to go beyond the limit by submitting the question and receiving a favorable vote of three-fourths of the electors enough interested to cast their ballots. In passing the act of 1911 the lawmakers were simply changing the *modus operandi* and power concerning the determination, certification and levying of the tax authorized by the usual school meeting, the title of the act being:

"An act relating to annual school levies, and amending section 7473 of the General Statutes of 1909, and repealing said original section."

No mention was made and apparently no thought was had of the special election provision found in the general limitation act of 1909. It is our duty to uphold rather than strike down legislative enactments, and while those under consideration contain provisions which might be considered as repugnant it is our duty to harmonize, if possible, so as to give effect to each rule of action prescribed by the lawmaking power. By regarding the act of 1911 as affecting only the levy following the ordinary school-district meeting, at which a majority controls, the special election provision of the previous act is left undisturbed and each statute is given effect according to what fairly appears to have been the legislative intention.

"It is a well-settled rule that, if both acts of the legislature can stand, it is our duty to give effect to both."

(*Randall v. Butler County,* 65 Kan. 20, 22, 68 Pac. 1083.)

"The general language of statutes will be limited to such persons and subjects as it is reasonable to presume the legislature intended it should apply." (*The State v. Smiley,* 65 Kan. 240, syl. ¶ 1, 69 Pac. 199.)

"In order that a specific provision of a legislative act be repealed by the implication arising from the passage of a subsequent act, such subsequent act must contain that which was clearly intended to take the place of such specific provision." (*Gilbert v. Craddock,* 67 Kan. 346, syl. ¶ 1, 72 Pac. 869.)

"The courts can not say that one statute repeals another statute by implication, or that one part of a section of a statute repeals another part of the same section, unless they are so repugnant to each other that under no circumstances can both be given force and effect." (*Newman v. Lake,* 70 Kan. 848, syl. ¶ 3, 79 Pac. 675.)

" 'If the provisions of the old act and of the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect. (*Stephens v. Ballou,* 27 Kan. 594, 601.)' " (*Newman v. Lake,* 70 Kan. 848, 856, 79 Pac. 675.)

"When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. . . . But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands." (36 Cyc. 1077, 1078.)

(See, also, *Elliott v. Lochnane,* 1 Kan. 126; *Griffith*

*v. Carter*, 8 Kan. 565; *The State v. Young*, 17 Kan. 414;
1 Lewis' Sutherland Statutory Construction, § 247;
Endlich on Interpretation of Statutes, § 223.)

The peremptory writ is allowed.