No. 19,712.

THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. FRANK M. HOLCOMB, as Clerk of Wyandotte County, etc., *Defendant.*

SYLLABUS BY THE COURT.

"SAMPLE BALLOTS"—*Must Be Printed and Distributed Prior to Election.* The provision of section 3262 of the General Statutes of 1909, requiring officers to print copies of the official ballots on paper of a color other than that of the official ballots, and to distribute them among candidates and their agents and to the voters through the party organizations, is not repealed by section 6 of chapter 189 of the Laws of 1913.

Original proceeding in mandamus. Opinion filed November 14, 1914. Peremptory writ allowed.

*John S. Dawson,* attorney-general, for the plaintiff.

*B. P. Waggener,* and *Walter E. Brown,* both of Atchison, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: Does the law authorize the printing and distribution of copies of ballots prior to election? is the question presented for determination in this case. In the statute enacted in 1909 it is provided that:

"The ballots shall be printed on clear white paper of sufficient strength as not to be punctured by ordinary pencil-marking, and thick enough that the marks may not be seen through the paper. They shall be put in the possession of the officer charged with their distribution at least five days before the election, accompanied by sufficient number, not to exceed fifty for each precinct, of exact copies of said ballots, printed on paper of any other color than white, for the inspection of candidates and their agents and for distribution through each of the party organizations. If any mistakes be discovered they shall be corrected without delay." (Gen. Stat. 1909, § 3262, subdiv. 8.)

The State, *ex rel.*, v. Holcomb.

Under this provision the officers have heretofore printed and distributed copies of the official ballot on paper of a color different from that of the official ballot for the information of candidates and voters as well as party organizations, giving them an opportunity to detect mistakes, if any are made, and to become familiar with a ballot that was rather long and complicated.  At the session of 1913 the legislature amended the election laws in several particulars, and one of the provisions of the amended act is as follows:

"The printing and circulation of sample or imitation ballot on the day of the election or any day prior thereto, is hereby prohibited, and the violation of this section shall be deemed a misdemeanor, and any person convicted thereof shall be fined not less than ten dollars or more than one hundred dollars."   (Laws 1913, ch. 189, § 6.)

Does the section last quoted operate as a repeal of the earlier provision which explicitly authorized the issue of copies of the official ballot?  There is no express repeal of this provision, and this is an important consideration since every other section which the later act purports to amend is singled out and expressly declared to be repealed in the last section of that act.  It is reasonable to infer that if the legislature had intended to abrogate and eliminate so important a provision of the general election law it would have been mentioned in the repealing clause, as was done with other provisions of the act that were amended.  The title of an act is an aid to its interpretation, and the title of the later act specifically names the sections to be repealed, and the section relating to copies of the ballot is not among them.  The legislature, it is true, may effect a repeal of a statute by implication, but ordinarily where the legislature intends to repeal a statute it is done in express terms, and so it is said that "the presumption is always against the intention to repeal where express terms are not used."   (36 Cyc. 1071.)   This rule has a special application where the

legislature, in the amendatory act, has adopted the method of express repeal as to other provisions of the original act. A rule to be applied on a contention that one statute repeals another is that if under any reasonable construction both provisions can be construed together and each given some effect both will be sustained. In *Keirsey v. Comm'rs of Labette Co.*, 30 Kan. 576, 2 Pac. 864, it was said that:

"Repeals by implication are not favored, and are sustained only when the later law cannot by any fair and reasonable construction be harmonized with the former. Both laws are to be sustained, if possible." (p. 579.)

The same rule was stated as follows in *Stephens v. Ballou*, 27 Kan. 594:

"If the provisions of the old act and of the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect." (p. 601.)

Another expression of the rule was given in *Newman v. Lake*, 70 Kan. 848, 79 Pac. 675, where it was argued that the provisions of the act were not consistent with each other, and in response it was said that:

"It, however, is not our duty to inquire whether the different provisions of the law are logical, sensible, rational, or even harmonious, but whether they are so repugnant that both can not stand. If, for any purpose or under any circumstances, their provisions can both find scope for action we must give efficacy to both." (p. 856.)

(See, also, *Hornaday v. The State*, 63 Kan. 499, 65 Pac. 656; *Noecker v. Noecker*, 66 Kan. 347, 71 Pac. 815; *School District v. Coughlin*, 88 Kan. 1, 127 Pac. 219.)

The earlier provision was a direction to public officers to print and distribute a limited number of the

ballots on paper other than white for the inspection of candidates and their agents, and for distribution among the voters of the different party organizations. The evident purpose of the provision is that if mistakes should be made in the printing of the ballot they could be corrected before the voting begins, and also that voters might have an opportunity to examine the form of the ballot and the arrangement of the names thereon, and thus be better enabled to vote for the candidates of their choice without making invalidating mistakes. Every one who has been required to canvass ballots, or examine those cast in order to determine their validity knows that numerous mistakes are made, and they can understand how necessary it is that electors should have some information as to the make-up of the long and complicated ballots before they undertake to mark or cast them. The official ballots are not distributed to electors, and they have no opportunity to even see one of them until the election officer presents it to them as they are about to enter the booth to mark it. Authentic copies of the official ballot, therefore, serve a very useful purpose, and when they are printed on paper differing in color from that of the regular ballot, there is little likelihood that they will be offered or accepted as official ballots, or that voters will be misled or deceived by them. It can hardly be inferred that the legislature intended to withhold from voters information essential to intelligent and correct voting, and such an interpretation should not be placed upon the two acts unless it is absolutely compelled by the terms employed. In the later act the legislature was manifestly striking at the practice which had grown up of the printing and distribution of sample ballots by private persons, for the accomplishment of their own purposes. The copies of the ballots issued by an officer, being of a color other than white, are easily distinguishable, but the imitation ballots issued by private persons might be of the same color and size of the

regular ballots, and might be unconsciously used in place of them. To avoid the use of unauthorized ballots the later act was passed. The prohibition was aimed at the issuance of ballots by private persons, and not at those issued by the officers of the law. The earlier act is a mandatory direction to the officer to print and distribute copies of the ballots, and the later one is a prohibition of the issuance of unofficial copies or imitations by any person other than authorized officers. This is indicated to some extent by the penal provision of the section, which prescribes that a violation of the provision is a misdemeanor for which a severe penalty is prescribed. A penalty is hardly necessary to prevent an officer from doing thereafter that which he had been legally doing theretofore. The issuance of copies of the official ballot was made exclusively a function of an officer, and the mandatory provision requiring him to perform an act so beneficial in its purpose can hardly be regarded as repealed by a general prohibition of the issuance of sample ballots, especially where there are no words of express repeal in the act. The first is an admonition directed to officers; the other is a prohibition against the act by persons other than officers. In this view there is scope for the operation of both provisions, and the general rule is that if there is a field in which each provision may have force and effect under any circumstances, neither should be deemed to be repealed by implication.

In the act of 1913 itself it is provided that there shall be printed on the back or outside of the ballot the words "official general ballot," or "official township ballot," or "official city ballot," as the case may be, as if to distinguish these ballots printed on white paper from the copies of the official ballots provided for in the general statute, and which the legislature evidently contemplated would be issued.

It is said that the act of 1913, which provides for what is commonly designated as the Massachusetts

The State, *ex rel.*, v. Holcomb.

form of ballot in place of the one with party columns by which an elector could vote for all the candidates *en bloc* by a single mark at the head of the column, indicates a purpose to adopt the nonpartisan method, and that now there is no occasion for the distribution of copies of the official ballot among party organizations as provided for in the act of 1909. While the later act abolishes party columns and party emblems, it recognizes that party nominations will be made and party organizations maintained, and therefore there is the same occasion to distribute copies of the ballot through political organizations as before. Under the new plan the names of all candidates for a particular office are grouped together under the title of the office, but it is specifically provided that to the name of each candidate his party or political designation shall be added. Aside from that; it is required that exact copies of the ballots printed on paper of a color other than white shall be issued for the inspection of candidates and their agents, and it was evidently contemplated that the distribution was for the benefit not only of candidates and party organizations, but also for the information and benefit of all voters in and out of political organizations.

There is room for the operation of the general statute, which provides for the issuance of copies of the official ballot, and, under the rules of interpretation already stated, we can not, in the absence of an express repeal, hold that the earlier statute has been abrogated.

The peremptory writ will, therefore, be allowed.

Mr. Justice BURCH and Mr. Justice BENSON dissent.