No. 22,595.

IDA A. DUBOURDIEU, *Appellee,* v. DELAWARE TOWNSHIP OF WYANDOTTE COUNTY, *Appellant.*

SYLLABUS BY THE COURT.

1. DEFECTIVE HIGHWAYS—*Liability of Townships—Statute Fixing Liability Not Unconstitutional.* Chapter 237 of the Laws of 1887 (Gen. Stat. 1915, § 722), entitled "An act making counties and townships liable for defects in bridges, culverts and highways in certain cases," is not in conflict with section 16 of article 2 of the constitution. Neither the title nor the act embraces more than one subject. The subject is liability for injuries caused by defects in highways, and the purpose was to impose the liability upon the particular political subdivision of the state whose duty it was to keep the road in proper repair.

2. SAME—*Bridge a Part of Highway.* In the act in question, as in legislation generally respecting roads and bridges, the legislature considered a bridge as constituting part of a highway.

3. SAME—*Statute Not Repealed by Implication.* The enactment of amendatory legislation respecting roads and highways has not by implication repealed chapter 237 of the Laws of 1887 (Gen. Stat. 1915, § 722).

4. SAME—*Defective Highway Was a Township Road.* In an action against a township to recover damages for injuries occasioned by a defect in a public highway, one of the defenses was that the highway was a county, and not a township, road. The county had built and maintained a bridge upon it, but the board of county commissioners had never designated it as a county road; it had been maintained

Dubourdieu v. Delaware Township.

and kept up by the township for several years, and after plaintiff's injury the township repaired the defective conditions and filled and graded the roadway. *Held*, that the evidence was sufficient to sustain a finding that it was a township road.

5. SAME—*Erroneous Instruction Not Prejudicial.* An erroneous instruction considered, and *held* not to be prejudicial, in view of the issues, pleadings, evidence, and other instructions.

6. SAME—*Instruction No. 4 Relating to Notice of Defect in Highway Not Erroneous.* The court instructed that if the jury found there was actual notice to the township trustee of the defective condition for at least five days before the accident, "or that the trustee had actual notice for said length of time of the existence of such conditions of the road as would necessarily lead the trustee in the exercise of his faculties to logically conclude and know that the continuance of such conditions would probably result in caving or giving away of the road and injury to persons using the road while exercising due care for their own safety, then you should find for the plaintiff upon the question of whether or not the trustee had the five days' notice required by the statute." *Held*, that the latter portion of the instruction is not open to the objection that it authorized a finding of liability upon constructive notice; and that under the circumstances of this case, knowledge of the conditions, brought home to the trustee by actual notice, was knowledge of the defect which plaintiff claims caused the injury.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed April 10, 1920. Affirmed.

*L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the appellant.

*James L. Hogin,* and *Roy R. Hubbard,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff brought suit against Delaware township in Wyandotte county to recover damages for injuries caused by a defective highway. There was a verdict and judgment in her favor, from which the township appeals.

The plaintiff, a widow 45 years of age, had been for several years conducting an auto livery business at Bonner Springs. The evidence showed that in Delaware township a public highway runs in a general southerly direction from the town of

Bonner Springs to Loring, a station on the Union Pacific railroad. A short distance outside of Bonner Springs it crosses Wolf creek. Over Wolf creek a steel bridge was erected and maintained by Wyandotte county. For 200 feet beyond the bridge there were deep gullies or ditches on either side of the road, so that the roadway at the top was only from 8 to 9 feet in width at the point where the accident happened. The ditch on the right-hand side was from 8 to 10 feet deep, and the action of water after heavy rains had washed out and undermined the roadway, leaving a shelf of unsupported earth, held together by weeds and grasses which grew in the ditches. The plaintiff was driving a touring car and traveling about 20 miles an hour. When she reached a point 90 feet south and west of the bridge, a portion of the side of the road, probably 18 inches wide, settled or caved from beneath the right-hand front wheel of her car. She testified that the dropping of the car in front threw her forward against the steering wheel; that the differential dragging on the more solid ground held the car from plunging forward, but the heavier weight of the rear portion of the car caused it to swing round to the left; that she then leaned to that side so that her weight helped to balance the car, preventing it from tipping over, and that it fell into the ditch, throwing her backward and bruising and injuring her. The testimony is that the force of the fall broke all but three spokes in the right rear wheel and caused some other slight injuries to the car, not sufficient, however, to prevent it from being operated. The plaintiff got out of the car, climbed up on the bank, mashed down some weeds so that she could examine more closely the condition of the ditch, then got back into the car and drove it a few hundred yards up the ditch to where the ditch ran out, turned the car round and drove about a mile to Bonner Springs. On the same day she took an interurban car to Kansas City to obtain repairs and parts for the car, and after getting them returned on the interurban; she suffered considerable pain while in Kansas City and on the return trip, but was able, with the assistance of her daughter, to walk to her home from the car line, a distance of about two blocks.

Defendant's first contention is, that chapter 237 of the Laws

Dubourdieu v. Delaware Township.

of 1887 is unconstitutional. The chapter comprises section 722 of the General Statutes of 1915, and authorizes, in certain cases, actions of this kind to be brought against a county and, in certain other cases, against townships, provided in the one case the chairman of the board of county commissioners, and in the other the trustee of the township, shall have had notice of the defect for at least five days prior to the time when the injury was sustained. The title reads:

"An act making counties and townships liable for defects in bridges, culverts and highways in certain cases."

It is insisted that the act contains two subjects, and that the title indicates an intention to make counties and townships jointly liable for certain defects; that it is one thing to say that a county shall be liable for injuries occurring upon a bridge, and a different subject to say that townships shall be liable for injuries upon a highway. It is conceded that if the title read, "An act relating to highways and providing for liability for defects therein," it would be a single subject and express clearly what it intended to cover, but it is urged that even under such a title the act must relate to highways and bridges upon such highways, or it would embrace more than one subject.

It has been held that in order to correctly interpret this provision of the constitution, its purpose must be taken into consideration, and it must not be construed in any narrow or technical spirit, but liberally on the one side so as to guard against the abuse intended to be prevented, and liberally on the other side so as not to embarrass or obstruct needed legislation; that the title of an act may be as broad and comprehensive or as narrow and restricted as the legislature may choose to make it; it may include innumerable minor subjects, providing they are capable of being combined and united so as to form only one grand and comprehensive subject; that in considering the title, as well as the act, reference must be had to the object of the act and the evil sought to be remedied. (*Division of Howard Co.,* 15 Kan, 194; *The State v. Barrett,* 27 Kan. 213.)

We think neither the title nor the act embraces more than one subject. The subject of the act is liability for injuries

caused by defects in highways; the purpose was to impose that liability (where it had not rested before) upon the particular political subdivision of the state whose duty it was to keep the road in proper repair. By a strictly grammatical construction, the language of the title might be said to indicate an intention to impose a joint liability upon counties and townships, but mere awkwardness of expression will not overthrow a statute, nor will courts upon mere doubts of its constitutionality declare a law invalid; and the courts may restrict or enlarge the ordinary meaning of language for the purpose of upholding the validity of a statute. (*The State, ex rel., v. Ewing,* 22 Kan. 708, 712.)

The defendant insists, however, that under the statute the defective bridge does not necessarily need to be upon a highway at all; that it has no connection with a highway, and attention is directed to the language of that part of the title which reads, "liable for defects in bridges, culverts and highways." We think that in this act, as in all other legislation with reference to bridges and highways, the legislature considered that a bridge is part of a highway—which it always is. The first definition of a bridge given by Webster's International Dictionary is, "A structure, usually of wood, stone, brick, or iron, erected over a river or other watercourse, or over a chasm, railroad, etc., to make a passageway from one bank to the other." If an accident were caused by a defect in a bridge erected and maintained by a county on a township road, the county under certain conditions would be liable; if the injury were caused by a defect in the part of the road maintained by the township, the township would under similar circumstances be liable. Under the present road laws all public roads are either state roads, county roads, mail routes, or township roads (Gen. Stat. 1915, § 8772), and certain classes of bridges on a township road are county bridges, because it is made the duty of the county to build them where the cost exceeds a certain amount. (Gen. Stat. 1915, § 8825, as amended by Laws 1917, ch. 265, § 11.) As we have seen, it was the legislative purpose to define the liability of townships and counties in certain instances for defects in highways, and each provision of the act is fairly adapted to accomplish the purpose and has a logical connection with the general subject.

The statute has been in force for more than thirty years. If, at a time when the paramount necessity for the construction and maintenance of good roads is recognized everywhere, and when the people of every community in the state are planning to assume heavy burdens in order to establish good and safe roads, the court upon such slight grounds, should now hold the statute invalid and declare that there is no law imposing a liability upon counties or townships for damages caused by defects in highways, it would, indeed, startle the general public and astonish the legal profession.

There is the further contention that section 722 has been repealed by subsequent legislation concerning roads and highways. The section was a part of article 1 of chapter 15 of the General Statutes of 1915, the title of the chapter being "Bridges." The legislature of 1917 expressly repealed all the sections of that chapter from 708 to and including section 739 except section 722. The fact that in revising the law they allowed the liability statute to stand as it was, makes against the theory of the repeal of the latter by implication. Besides, there is nothing in the section inconsistent with or repugnant to the provisions of the amendatory act. Repeals by implication are not favored, and it has been declared that the courts cannot say that "one statute repeals another statute by implication . . . unless they are so repugnant to each other that under no circumstances can both be given force and effect." (*Newman v. Lake,* 70 Kan. 848, syl. ¶ 3, 79 Pac. 675. See, also, *Stephens v. Ballou,* 27 Kan. 594; *Keirsey v. Comm'rs of Labette Co.,* 30 Kan. 576, 2 Pac. 864; *School District v. Coughlin,* 88 Kan. 1, 127 Pac. 219.)

The presumption is against repeal by implication "where the legislature, in the amendatory act, has adopted the method of express repeal as to other provisions of the original act." (*The State, ex rel., v. Holcomb,* 93 Kan. 424, 144 Pac. 266.) The rule is that both laws are to be sustained "If, for any purpose or under any circumstances, their provisions can both find scope for action." (*Newman v. Lake,* supra [p. 856], and see authorities cited in *The State, ex rel., v. Holcomb,* supra.)

The main contention of the defendant is that the road where the plaintiff was injured is a county road and not a township road. The testimony shows that the road had been a public

highway for 35 years and was part of what was known origi-
nally as the Groene road; that the county built the bridge
over Wolf creek several years ago, and after that bridge was
washed out the county in 1901 built a new bridge; and that
the township graded up the road after the first bridge was built
and.made it a highway in shape for travel. The township hired
this work done and paid for it. It had made all the repairs,
cut the weeds and dragged the road, at least since 1901. After
the plaintiff's accident the township built retaining walls on
both sides of the road, filled in the ditches, graded up and
made the road a. level highway for a width of from 18 to 20
feet extending from the end of the bridge a distance of about
200 feet. The township trustee testified that he had this work
done and that the township paid for it. The road overseer of
the township testified that the road was in the district where
he worked, and that it was the township's business to look after
the road. The testimony shows that the road connects at the
western limits of Bonner Springs with two of the streets of
that town and with a road coming from the north. There
is no more reason for considering it as a detour of the Kaw
Valley road, which ends at the western limits of Bonner, than
as a part of the road leading north ·from that town. Under
the statutes it was the duty of the county commissioners to
classify county roads. (*Irvin v. Finney County,* 106 Kan. 171,
186 Pac. 975; Laws 1911, ch. 248.) Section 1 of this act (Gen.
Stat. 1915, § 8755) defines county roads as follows:

" 'County roads,' all roads designated as such by the board of county
commissioners of a county connecting cities and market centers. . . ."

The county clerk testified that there was no record of the
road from Bonner Springs to Loring having been designated
or set apart as a county road. The county engineer, who was
appointed in June, 1917, testified there was in his office, made
under his direction and that of the board of county commis-
sioners, a map showing the county roads as approved by the
board. He began the preparation of the map in September,
1917, but could not say whether it was before or after the date
of the accident, but that the map was the only one ever ap-
proved. It contains no reference to the road where the plain-
tiff was injured. It mentions, however, a road from the west

limits of Kansas City, Kan., to the east limits of Bonner· Springs, known as the Kaw Valley road. The defendant's con-- tention that the road where the plaintiff was injured was a. county road is based, for the most part, upon a lease which the· county clerk produced, executed by the Union Pacific Railway Company in August, 1916, by which it leased to Wyandotte· county a strip of ground on its right of way from the western; limits of Kansas City to the west side of the county for road purposes, the county agreeing to pay a yearly rental, the lease containing a provision that it should not be assigned or trans- ferred, and that no one but the county commissioners could go into possession of the road or do any work thereon. It con- tained an agreement also that the lease might be canceled upon. ninety days' notice. Accompanying the lease was a blue print. or plat drawn in the office of the engineer of the railway com-- pany which shows a public road running from a point east of Muncie on the right of way of the railway company to a point south and east of Bonner Springs, where it leaves the right of way and extends to the eastern limits of Bonner Springs. The plat also shows the same road beginning again at the west limits of Bonner Springs and running in a southwesterly direction for nearly 2,000 feet, where it again enters upon the railway right of way and extends to Loring. Long before this. lease was executed, however, the county obtained legislative authority (Laws of 1899, ch. 276, § 1) to construct "a certain public highway beginning at the west boundary of the city of Argentine; thence, by way of the Turner bridge, Muncie, and Edwardsville, to Bonner Springs, commonly known as the Kaw Valley road," and in pursuance of that authority the county macadamized the road which is known and designated· as the Kaw Valley road; but in conformity with the statute it ends at Bonner Springs. The mere fact that the engineer of the rail- way company or some clerk in his office, in preparing the map, saw fit to show a road two or three thousand feet off the rail- way right of way and to designate it as part of the Kaw Val- ley road is no proof that it was part of that road. The lease on the right of way was not obtained until about fifteen years after the Kaw Valley road had been taken over by the county. Moreover, as is well known, the Union Pacific Railway Com-

pany, in order to secure recognition of its rights in and possession of its 400-foot right of way, has seen fit within the past few years to procure the acceptance of written leases by municipalities and individuals that had theretofore occupied portions of the right of way, and this doubtless explains the purpose for which the lease was executed. In any event, however, the lease had no effect upon any lands outside the right of way.

We are unable to concur in defendant's statement that "there was evidence strongly tending to show the county alone had charge of this road." On the contrary, we discover no evidence to show that fact, but think the overwhelming evidence showed that the road upon which the plaintiff was injured was a township road. In this connection complaint is made of instruction No. 4, which standing alone seems to be erroneous. As instruction No. 5 relates to the same question, we print the two together. They read:

"4. Before the defendant township can be made liable for damages in this case, you must find from a preponderance of the evidence that the road was within the township; that it was a road generally traveled by the public and maintained at public expense; that is to say, by Delaware township or Wyandotte county for the purpose and object of being used and traveled by people generally, as a part of the public highway system within the township.

"5. If you find that portions of said highway, of which the road at the point in question forms a part, was leased by the county of Wyandotte for the purpose of public travel as a public highway, and that the county built the bridge across Wolf creek on this road for the purpose of having the public use the road, and that the road at the point in question has not been designated as a county road by the county and state officials, and was taken charge of by the township officers and has been repaired and improved by Delaware township, I instruct you that the plaintiff, if otherwise entitled to recover, will not be precluded by the fact that said road was never laid out and established as a township road."

There is ground for the contention that the jury were given to understand that if the road was maintained by Wyandotte county for the purpose of being used and traveled by the public generally as a part of the public highway system within the township, the township would be liable. No explanation is offered as to how instruction No. 4 came to be given. We are disposed to regard it, however, as not prejudicial to the defendant. The allegations of the petition were sufficient, we think, to charge that the road from Bonner Springs to Loring

was a township road.  It alleged that there was within the limits of the township this road, and that it had at all the times mentioned been maintained by the township.  As already stated, there was, in our opinion, no testimony to show that it was a county road, or that it was maintained by the county; and the plaintiff was not contending that she could recover against the township if the road was a county road or maintained by the county.

Complaint is made of other instructions, particularly No. 7, which reads:

"The notice required by the statute means actual notice of the defects complained of as causing the injury.  And, if the road in question was defective, as charged by plaintiff and had been so for more than five days prior to the accident, and the jury believe from a preponderance of the evidence that the township trustee had actual notice of the defective conditions at the place in question for at least five days before the accident to plaintiff; *or that the trustee had actual notice for said length of time of the existence of such conditions of the road as would necessarily lead the trustee in the exercise of his faculties to logically conclude and know that the continuance of such conditions would probably result in caving or giving away of the road and injury to persons using the road while exercising due care for their own safety, then you should find for the plaintiff upon the question of whether or not the trustee had the five days' notice required by the statute.*"

We have italicized the portion of the instruction which the defendant insists permitted the jury to find against the township if they believed from the evidence that the township trustee had only constructive notice.  In considering the effect of the instruction, it is proper to consider also instruction No. 8, which reads:

"If the township trustee had knowledge for at least five days prior to the date of the accident that the road in question was cut away and undermined by the action of water and the elements and that the result of such action of the elements and water would be to make the road defective and unsafe for users thereof in the exercise of due care, then you may, if you so believe from the evidence, find that he had actual notice of the defect."

We think the instruction is not open to the criticism suggested.  In the defendant's brief it is said:

"It is one thing to have actual knowledge; it is another thing to have knowledge of some other fact that might eventually suggest investigation.  That the trustee did know is one thing; that in the exer-

cise of his faculties he would logically conclude that the defects complained of existed is something which is entirely different."

In addition to the fact that the jury were expressly told that the trustee must have actual notice of the defects complained of, the portion of the instruction objected to goes no further than to charge that if he had actual notice for five days before the plaintiff's injuries, of the existence of such conditions in the road as would necessarily lead him, in the exercise of his common sense, "to logically conclude and know" that the continuance of such conditions would probably result in the road caving in, then he had actual notice that it had been undermined. In the most recent case upon the necessity of showing actual notice, in place of constructive notice (*Wagner v. Edwards County,* 103 Kan. 719, 176 Pac. 140), it was said:

"Actual information may be implied, when the principal has at hand means of information which he can and ought to use" (p. 727);

and in *Mosier v. Butler County,* 82 Kan. 708, 109 Pac. 162, where a person was injured by reason of the giving way of a defective guard rail on the approach to a bridge, it was said that if the chairman of the county board "had knowledge of the condition of the guard rails, and that they were unsafe, as he testified, he had notice within the meaning of the statute" (p. 710), and that it was not necessary for the plaintiff to show that the chairman had knowledge of the defective condition of the railing at the exact spot where it gave way.

In *Sims v. Williamsburg Township,* 92 Kan. 636, 141 Pac. 581, an instruction using the following language was approved:

"The conditions being such that injury to users of the highway was reasonably and naturally to be anticipated, actual knowledge of the conditions obtained by the township trustee by personal observation while repairing the road constituted notice of defect." (Syl. ¶ 1.)

In the opinion in that case it was said:

"To those upon whom rested the duty of keeping the highway free from defects the conditions themselves fairly spelled danger, and knowledge of the conditions was knowledge of a defect in the road." (p. 639.)

There was evidence showing that the trustee had been notified by the assistant road overseer and others of the fact that the roadway at the place where the plaintiff was injured had

been undermined and cut away by the action of water in the ditch. It is true that some of the witnesses admitted that at the same time they. told him that the road had narrowed down and was dangerous on account of being narrow. In the course of time the roadway had washed and narrowed down from one 35 or 40 feet wide to one less than 10 feet, and this left a dangerous condition which it was natural for those complaining to the trustee to mention. The fact that they called his attention to other defects in the highway at the same time would not destroy the effect of the notice.

It is urged that the 11th and 19th instructions took away from the jury the question whether the road was a county or a township road, and charged as a matter of law that it was the duty of the township at all times to maintain the road in a reasonably safe condition. Of course, in its last analysis, the question of whether it was a county or township road was one of fact, but it is hardly conceivable that the court could have committed error in instructing on this question in view of the evidence which was all one way.

Except for the error in instruction No. 4, which we must regard as nonprejudicial, we discover no error in the instructions given, and as they covered the issues fully, there was no error in refusing the instructions which the defendant asked.

The judgment is affirmed.

DAWSON, J. (dissenting in part) : With all due allowance for difference of opinion, the evidence relating to the plaintiff's injuries convinces me that the verdict was excessive; and this court should now order a substantial reduction in the amount of the judgment, with the alternative that a new trial be granted if the plaintiff so prefer. (Civ. Code, §§ 307, 581, Gen. Stat. 1915, §§ 7209, 7485; *Aaron v. Telephone Co.,* 89 Kan. 186, 195, 131 Pac. 582; *Truman v. Railroad Co.,* 98 Kan. 761, 767, 161 Pac. 587; *Williams v. Hanna,* 105 Kan. 540, 547, and citations, 185 Pac. 17.)