No. 28,765.

The State of Kansas, ex rel. William A. Smith, Attorney-general, *Plaintiff*, v. O. T. Atherton, as Mayor, and W. J. Reynolds and F. J. Kenney, as Commissioners, of the City of Emporia, *Defendants*.

(273 Pac. 905.)

Opinion filed January 25, 1929.

*William A. Smith,* attorney-general, *W. C. Ralston,* assistant attorney-general, and *Roscoe W. Graves,* of Emporia, for the plaintiff.

*O. L. Isaacs,* of Emporia, for the defendants.

The opinion of the court was delivered by

Marshall, J.: This is an original action in mandamus to compel the defendants as the governing body of the city of Emporia to "proceed at once to the issuance and sale of bonds in an amount sufficient to pay one-third of the cost of construction of a subway under the tracks of the Atchison, Topeka & Santa Fe Railway Company on Mechanic street in the city of Emporia, Kansas." The defendants have filed an answer in which they allege that there is no statutory authority for the city of Emporia to do the things prayed for in the petition of the plaintiff. The alternative writ alleges that a petition had been filed asking that Mechanic street between Logan avenue and Fourth avenue be drained, graded, curbed, guttered, and paved, and at the time the petition was filed the property owners, who had signed it, orally asked the governing body of the city to construct a subway under the tracks of the Atchison, Topeka & Santa Fe Railway Company, at Third avenue and Mechanic street, in the city of Emporia; that the matter of constructing a subway was then taken up with the Atchison, Topeka & Santa Fe Railway Company and an agreement was reached by which the railway com-

pany agreed to pay for two-thirds of the cost of constructing the subway provided the city of Emporia would pay the other one-third; that the proposition was submitted to the voters of the city of Emporia to determine whether or not the city should issue bonds in the sum of $55,000 with which to provide funds to pay one-third of the cost of the subway; that the proposition carried by a large majority; but that afterward the governing body of the city, at a regular session, determined not to issue the bonds because of insufficiency of statutory authority to issue the same and to levy a tax for the payment thereof.

By their answer the defendants present but one issue and that is that the city does not have statutory authority to issue the bonds described in the alternative writ. The plaintiff has asked that a peremptory writ be issued for the reason that the answer does not set forth any sufficient reason for refusing to issue the writ. The sole question for determination is: Do the statutes give to the city of Emporia authority to pay one-third of the cost of constructing the subway? The problem is one of interpreting material statutes.

The plaintiff relies on and cites sections 14-402, 14-423 and 14-434 of the Revised Statutes. So far as material, those statutes read:

"The cities of the second class coming under the provisions of this act in their corporate capacity are authorized and empowered to enact ordinances for the following purposes in addition to the other powers granted by law. . . . Second. To open and improve streets, avenues and alleys, make sidewalks and build bridges, culverts, sewers . . ." (R. S. 14-402.)

"The council shall have power to open, widen, extend, or otherwise improve any street, avenue, alley, or lane. . . ." (R. S. 14-423.)

"The council shall have power to . . . provide for the passage of railways through the streets and public grounds of the city; also to regulate the crossings of railway tracks and to provide precautions and prescribe rules regulating the same, and to regulate the running of railway engines, cars and tracks within the limits of said city, and to prescribe rules relating thereto, and to govern the speed thereof, and to make any other and further provisions, rules and restrictions to prevent accidents at crossings, and on the tracks of railways. . . ." (R. S. 14-434.)

So far as quoted these provisions appeared in chapter 100 of the Laws of 1872 and have continued from that time until the present.

In the *City of Argentine v. A. T. & S. F. Rld. Co.*, 55 Kan. 730, 41 Pac. 946, this court said:

"A city of the second class is vested with power to construct at its own expense, or to require the construction by a railroad company at its expense, of a viaduct or bridge over railroad tracks within the city, where the safety

and convenience of the public make it necessary; and when it is deemed to be just that the cost of such a structure should be divided between the city and the railroad company, the city may contribute or bind itself to pay a share of such cost." (Syl.)

In the opinion of that case this court said:

"Argentine is a city of the second class, and although there is no statute which in express terms provides for the building of viaducts in cities of that class, there appears to be ample authority for such a city to build or require · the building of viaducts or bridges over railroad tracks where the convenience and safety of the public make it necessary. In the act governing cities of the second class, authority is given to open and improve streets, avenues and alleys, and to build bridges within the city. (Gen. Stat. of 1889, ¶ 788.)   It also provided that the city may provide for the passage of railways through the streets and grounds of the city, regulate depots, and depot grounds, the crossing of railway tracks, the running of railway engines, cars and trains within the limits of the city, and make any other and further provisions to prevent accidents at crossings and on the tracks of railways.   (¶ 821.)   In addition to these, there are provisions vesting the care, management and control of the city in the mayor and council, authorizing them to open, widen, extend, or otherwise improve the streets and avenues of the city, and to prevent all encroachments upon them, and granting authority to them to enact all such ordinances as they shall deem expedient for maintaining the good government and welfare of the city, its trade and commerce (¶¶ 787, 811, 812, 824).   Under these general provisions we think there is ample power in a city of the second class to construct or require the construction of viaducts over railroad tracks.   .   .   .

"It is conceded by the city that it had the power to compel the railroad company to build the viaducts wholly at the expense of the company; and that the city can build them at its own expense, under the provisions mentioned, there can be little doubt. As the city may construct them entirely at its own expense, no reason is seen why it may not contribute a part of the expense of viaducts determined to be necessary. The questions of necessity and expediency of viaducts, the character and cost of those which the safety and convenience of the public may require, and the means of providing them, including what proportion of the expense should be borne by the city and what by the railroad company, are for the determination of the mayor and council, rather than the court. The fact that the city can compel the railroad company to build a viaduct upon certain conditions at its own expense does not prevent the city from sharing the expense under other circumstances where it is deemed to be just that a division of the expense should be made, and that question, like the others which have been mentioned, so far as the municipality is concerned, rests with the legislative authority of the city." (pp. 733, 734.)

The statutes on which that decision was based were sections 787, 788, 811, 812, 821 and 824 of the General Statutes of 1889, all referring to cities of the second class.   Section 787 gave to the mayor

and council the care, management and control of the city, and its finances, and power to enact ordinances necessary for the good government of the city, etc. That statute now appears as section 14-401 of the Revised Statutes. Section 788 of the General Statutes of 1889 gave power to "open and improve streets, avenues and alleys, make sidewalks, and build bridges, culverts and sewers within the city." That statute, with amendments not here material, appears as the second subdivision of section 14-402 of the Revised Statutes. Section 811 of the General Statutes of 1889 gave to the council "power to open, widen, extend, or otherwise improve any street, avenue, alley, or lane." Those powers are now given by section 14-402 of the Revised Statutes. Section 812 of the General Statutes of 1889 gave to the council power to "prevent all encroachments into and upon the sidewalks, streets, avenues, alleys, and other property of the city." That statute is now section 14-424 of the Revised Statutes. Section 821 of the General Statutes of 1889 gave to the council power "to provide for the passage of railways through the streets and public grounds of the city; also to regulate the crossings of railway tracks, and to provide precautions and prescribe rules regulating the same, and to regulate the running of railway engines, cars and tracks within the limits of said city." It now appears as section 14-434 of the Revised Statutes. Section 824 of the General Statutes of 1889 provided that "for any purpose or purposes mentioned in the preceding sections, the council shall have power to enact and make all necessary ordinances, rules and regulations," etc. That statute now appears as section 14-439 of the Revised Statutes.

These statutes were referred to in *City of Argentine v. A. T. & S. F. Rld. Co.*, supra. The court distinctly said that they afforded ample power to cities of the second class to construct or require the construction of viaducts over railway tracks, and that there was express authority given for the construction of bridges. The court then defined bridges so as to include viaducts. But the decision rested on the general grant of powers above referred to, all of which are still in force. Under these general grants, a city of the second class has as much power to construct a subway as it has to build a viaduct.

The defendants contend that section 12-1633 of the Revised Statutes takes from cities of the second class the power to construct

a subway under railroad tracks under sections 14-402, 14-423 and 14-434 of the Revised Statutes, and that section 12-1633 abrogates *City of Argentine v. A. T. & S. F. Rld. Co.*, supra, and compels such a city to proceed under it. So far as material, that section reads:

"The governing body of cities of the first and second class shall have the power to regulate the crossings of railway and street-railway tracks and provide precautions and prescribe rules regulating the same, and to regulate the running of street railways or cars and railway engines and cars in the city, and to prescribe rules relating thereto and to govern the speed thereof; and to make other and further provisions, rules and regulations to prevent accidents at crossings and on tracks of railways, and to prevent fires from engines, and to require all railway companies to erect viaducts over or tunnels under their tracks at the crossing of streets. The governing body shall have power to require any railroad company or companies owning or operating any railroad or street-railway track or tracks upon or across any public street or streets of the city to erect, construct, reconstruct, complete and keep in repair any viaduct or viaducts upon or over or tunnels under such street or streets and over or under any such track or tracks, including the approaches of such viaduct, viaducts, or tunnels, as may be deemed and declared by the governing body to be necessary for the convenience, safety or protection of the public."

Provision is then made for determining damage sustained by property owners, and then the section continues—

"The proceedings for such purpose shall be the same as provided by law for the purpose of ascertaining and determining damages to property owners by reason of the change in grade of any street, except that such damage shall be paid by such railway company or companies."

This statute first appeared as section 59 of chapter 122 of the Laws of 1903, and gave to cities of the first class power—

"To regulate the crossings of railway and street-railway tracks and provide precautions and prescribe rules regulating the same, and to regulate the running of street railways or cars and railway engines and cars in the city, and to prescribe rules relating thereto and to govern the speed thereof; and to make other and further provisions, rules and regulations to prevent accidents at crossings and on tracks of railways, and to prevent fires from engines, and to require all railway companies to erect viaducts over, or tunnels under, their tracks at the crossing of streets."

This section was amended by section 1 of chapter 89 of the Laws of 1911 by extending the operation of the section so that it covered practically the entire field now covered by Revised Statutes, section 12-1633, except that it still was restricted in its operation to cities of

the first class. By chapter 106 of the Laws of 1913 the operation of the statute was extended so as to include cities of the second class. The repealing clause of the last-named act was as follows:

"That section 1, chapter 89, of the Session Laws of 1911 is hereby repealed."

No other act or part of act was expressly repealed by chapter 106 of the Laws of 1913. There was nothing in the act to indicate that it was the intention of the legislature to repeal any law giving to cities of the second class any power which they at that time possessed. If those powers were taken from cities of the second class by chapter 106 of the Laws of 1913, it was done by implication. Repeals by implication are not favored. (*Stephens v. Ballou,* 27 Kan. 594, 601; *Keirsey v. Comm'rs of Labette Co.,* 30 Kan. 576, 579, 2 Pac. 864; *Kansas Breeze Co. v. Edwards,* 55 Kan. 630, 633, 40 Pac. 1004; *Hornaday v. The State,* 63 Kan. 499, 502, 65 Pac. 656; *Newman v. Lake,* 70 Kan. 848, 79 Pac. 675; *State, ex rel., v. Holcomb,* 93 Kan. 424, 426, 144 Pac. 266; *Dubourdieu v. Delaware Township,* 106 Kan. 650, 655, 189 Pac. 386; *Schnatterly v. Eslinger,* 126 Kan. 9, 13, 266 Pac. 657.)

In *Stephens v. Ballou,* 27 Kan. 594, 601, this court said:

"If the provisions of the old act and of the new can be reconciled by any possible mode of interpretation or construction, if the old act and the new can both be given force and effect, according to their terms and under any circumstances, then it should never be held that one overturns and destroys the other, but both should be given full force and effect."

The cases above cited either declare or support this rule. (See, also, *School District v. Coughlin,* 88 Kan. 1, 6, 127 Pac. 219; *Shortall v. Huppe,* 99 Kan. 639, 641, 162 Pac. 319; *Harwood v. Railway Co.,* 101 Kan. 215, 219, 171 Pac. 354.) Other cases on both of these propositions might be cited, but it is not necessary.

Can the powers conferred on cities of the second class by Revised Statutes, sections 14-402, 14-423 and 14-434, be exercised notwithstanding the existence of Revised Statutes, section 12-1633? In other words, may a city of the second class proceed under one of the first three sections named or under the last section as the city may deem best? There is nothing in section 12-1633 which prohibits a city from operating under any other statute. Section 12-1633 by its term is permissive, not compulsory. If the city proceeds under that section, its act may be questioned by the railway company on the

ground of unreasonableness. If the city proceeds under the other powers granted to cities of the second class, its acts may be questioned by taxpayers for illegality of the tax, but cannot be questioned by the railway company on account of unreasonableness.

*City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, is the decision of this court concerning an ordinance of the city of Emporia by which that city undertook to compel the Atchison, Topeka & Santa Fe Railway Company to construct a subway under its tracks on another street in that city. The court held the ordinance unreasonable and refused to compel the railway company to construct the subway.

A city of the second class may desire to have a subway constructed under railroad tracks within the city at a certain place much to its advantage. The situation may be such that it would be unreasonable to ask the railway company to construct the subway at that place and pay all the expense thereof.

If a city, because of unreasonableness, cannot compel the construction of a subway under section 12-1633, there is nothing in that section which prohibits the city from proceeding under the general powers given to the city under other laws. Section 12-1633 appears to be cumulative. It gives statutory power in addition to other powers previously given by statute to cities of the second class. The powers given by that section are not conclusive, and it does not prohibit cities from proceeding under other powers given to them. The city of Emporia had power to contract with the Atchison, Topeka & Santa Fe Railway Company for the construction of the subway and to contract to pay part of the expense of such construction. The city has power to issue bonds for the purpose of raising the money with which to pay for such improvement.

It follows that the peremptory writ of mandamus should issue. It is so ordered.

HOPKINS, J., concurs in the result.